.IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MAGGIE KINSLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:08-cv-1203 |
| ) | Judge Trauger |
| LINCOLN NATIONAL LIFE ) | |
| INSURANCE CO., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is the plaintiff's motion for discovery (Docket No. 25), to which the defendant has responded (Docket No. 27), the plaintiff has replied (Docket No. 31), and the defendant has sur-replied (*see* Docket No. 32 Ex. A). For the reasons discussed herein, the plaintiff's motion will be granted.

## BACKGROUND

The plaintiff, Maggie Kinsler, brought suit against the defendant, Lincoln National Life Insurance Co., alleging that the defendant or its predecessor-in-interest[1] failed to provide the plaintiff with long-term disability benefits under an employee benefits plan, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). (*See* Docket No. 11.) The plaintiff alleges that the defendant's decision to deny benefits violated the terms of the plan, was arbitrary and capricious, and was not supported by substantial evidence in the record. (*Id.* ¶¶ 26-28.) The plaintiff also alleges that the decision-making process was arbitrary and capricious and

---

[1]In the interest of simplicity, the relevant entity is referred to herein as the "defendant."

did not provide the plaintiff with a reasonable opportunity for a full and fair review of the decision denying the claim. (*Id.* ¶¶ 27, 29-30.) Finally, the plaintiff alleges that the defendant's decision to deny benefits to the plaintiff was tainted by a conflict of interest to the extent that the defendant was responsible both for evaluating the plaintiff's claim for benefits and paying any benefits that would be due. (*Id.* ¶¶ 19-21, 31-32.)

## ANALYSIS

The plaintiff has sought limited discovery, consisting of six interrogatories and three requests for production of documents, pertaining to the defendant's alleged conflict of interest. (*See* Docket No. 26 Ex. C.) Specifically, the interrogatories seek information regarding the identity of the individuals responsible for the decision to deny the plaintiff's disability claim; the existence and nature of any type of incentive, bonus, or reward system for employees involved in reviewing such claims; the identities of any physicians, peer review physicians, physician consultants, or independent medical examiners who reviewed information related to the plaintiff's claim, whether employed by the defendant or by a third party; the frequency with which any such individuals reviewed claims on behalf of the defendant; and, in the case of reviewers employed by a third party, the number of reviews the defendant obtained through that third party. (*Id.* at 4-5.) In addition, the plaintiff has requested copies of documents showing any incentive, bonus, or reward system and the calculation of such bonuses; copies of agreements between third-party reviewers and the defendant; and correspondence between any third-party reviewer and the defendant regarding the plaintiff's disability claim. (*Id.* at 5.) The defendant has objected to those requests on the grounds that Sixth Circuit law does not permit such discovery in the absence of an initial threshold showing of conflict of interest, bias, or some

other procedural irregularity, and that the plaintiff has not made such a showing. (Docket No. 28 Ex. 4.) The plaintiff has now moved to be allowed this discovery. (Docket No. 25.)

As a general rule, in reviewing the decision of a benefits administrator in an ERISA action, "a district court may only consider evidence that was first presented to the administrator." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998) (Gilman, J., concurring and providing the opinion of the court with respect to this issue). This rule applies regardless of whether the court reviews the administrator's decision *de novo* or under an arbitrary and capricious standard of review. *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). As the Federal Rules of Civil Procedure limit discovery to "any nonprivileged matter that is relevant to any party's claim or defense, Fed. R. Civ. P. 26(b)(1), the practical effect of the scope of review in an ERISA case is to circumscribe the discovery that is available in an ERISA case, *see Wilkins*, 150 F.3d at 618. However, a narrow exception exists to the general rule that a court may only consider the administrative record on evaluating a denial of benefits claim under ERISA, such that a court may consider evidence outside the administrative record "when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id.*

Although the Sixth Circuit in *Wilkins* clearly articulated both the general rule and the exception that applies where an issue such as a conflict of interest is raised, the court provided little guidance into the application of this rule and its exception. Here, the plaintiff asserts that she has alleged a conflict of interest to the extent that the defendant was responsible for both evaluating the plaintiff's disability benefits claim and paying that claim. Therefore, the plaintiff

3

argues that she is entitled to the limited discovery that she seeks as it pertains exclusively to that allegation. The defendant argues that, although the plaintiff nominally has alleged a conflict of interest, she is only entitled to discovery into that issue if she makes an initial threshold showing, rather than merely an allegation, thereof. Resolving this question requires the court to consider and harmonize two competing lines of Sixth Circuit precedent.

One line of cases stands for the proposition that an ERISA plaintiff must do more than merely allege a conflict of interest to be entitled to discovery in an ERISA matter. The progenitor of this line of cases is the Sixth Circuit's unpublished decision in *Putney v. Medical Mutual of Ohio*, 111 F. App'x 803 (6th Cir. 2004). In *Putney*, the court held that the plaintiff was not entitled to discovery into the defendant's alleged bias because the plaintiff "presented virtually no evidence of procedural violations" and because a "mere allegation of bias is not sufficient to permit discovery under *Wilkins'* exception." *Id.* at 807. Later, in *Likas v. Life Insurance Co. of North America*, 222 F. App'x 481, 486 (6th Cir. 2007), the court held that the plaintiff was not entitled to discovery because he "failed to provide sufficient evidence of bias—or of any procedural irregularity—to justify prehearing discovery" and that a claim supported only "with conjecture, and a mere allegation of bias is insufficient to 'throw open the doors of discovery' in an ERISA case." Finally, in *Huffaker v. Metropolitan Life Insurance Co.*, 271 F. App'x 493, 504 (6th Cir. 2008), the court cited both *Putney* and *Likas* and concluded that "[a] plaintiff cannot obtain discovery beyond the administrative record—even if limited to a procedural challenge—merely by alleging a procedural violation." Notably, however, none of these three cases is published, and, thus, none provide binding precedent. *E.g.*, *Gray v. Moore*, 520 F.3d 616, 620 n.1 (6th Cir. 2008) (citing 6th Cir. R. 206(c)). Moreover, the defendant has

4

not pointed the court to any published, and therefore binding, Sixth Circuit rulings in support of this position.

The competing line of cases stands for the proposition that an ERISA plaintiff need not make any initial threshold showing of a conflict of interest in order to be entitled to discovery into this issue. In *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286 (6th Cir. 2005), the Sixth Circuit considered the impact that a potential conflict of interest had on the defendant's disability determination. The court noted, in a footnote, that the lack of discovery on the conflict of interest issue presented a challenge to the court in determining how much weight to afford that factor in evaluating whether the defendant's denial of benefits was arbitrary and capricious. *Id.* at 293 n.2. The court suggested that the plaintiff would have been entitled to pursue discovery regarding alleged bias under the *Wilkins* exception, stating:

> The Court would have a better feel for the weight to accord this conflict of interest if Calvert had explored the issue through discovery. While Calvert's counsel asserted that it was his understanding that discovery is never permissible in an ERISA action premised on a review of the administrative record, an exception to that rule exists where a plaintiff seeks to pursue a decision-maker's bias.

*Id.* Subsequently, in *Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 508 (6th Cir. 2005), the court observed that the plaintiff "has offered only conclusory allegations of bias" rather than presenting statistical evidence that would support his claim, and cited the language from *Calvert* suggesting that discovery with respect to bias would not only be useful in such a situation, but also permissible under the *Wilkins* exception. Thus, both *Calvert* and *Kalish* appear to endorse discovery where a plaintiff has made allegations of bias, without indicating that any initial threshold showing thereof is required. However, while *Calvert* and *Kalish*, unlike *Putney* and its progeny, are published cases, their precedential value nevertheless

5

is limited to the extent that the plaintiff in neither case had pursued discovery pertaining to bias and, thus, neither court considered whether a threshold showing of bias is required for discovery. Instead, in both cases, the courts' statements about the value of discovery in evaluating a bias claim—with the concomitant implication that a threshold showing is not required—were merely dicta.

The last relevant case in this second line of cases is *Moore v. Lafayette Life Insurance Co.*, 458 F.3d 416 (6th Cir. 2006). In *Moore*, the Sixth Circuit discussed the *Wilkins* exception, noting that a district court may consider evidence "offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process . . . or alleged bias" and that, therefore, "any prehearing discovery at the district court level should be limited to such procedural challenges." *Id.* at 430 (citing *Wilkins*, 150 F.3d at 618-19). Although it did not hold so explicitly, the court did not intimate that discovery requires an initial threshold showing of procedural irregularities and held that the district court had properly applied *Wilkins* by permitting discovery into whether the plaintiff had been denied due process, while limiting discovery into more substantive matters.[2] *Id.* at 431; *see also Smith v. Cont. Cas. Co.*, 450 F.3d

---

[2]The defendant characterizes the plaintiff's reliance on *Moore* as "perplexing," citing language from *Moore* that states, "the only logical reading of this Court's instructions in *Wilkins* is that until a due process violation is at least colorably established, additional discovery beyond the administrative record into a plaintiff's denial of benefits claim is impermissible." *Moore*, 458 F.3d at 431. However, the defendant misreads *Moore* and takes this language out of context. In *Moore*, the Sixth Circuit considered the plaintiff's argument that the district court, in permitting discovery only into whether the plaintiff had been denied due process, had improperly limited the scope of discovery by not permitting the plaintiff also to pursue discovery into matters pertaining to his denial of benefits claim. The court noted that *Wilkins* permits discovery into alleged procedural defects and then, only if this discovery lends support to those claims, may a court permit discovery into more substantive areas relating to the plaintiff's denial of benefits claim. *Id.* at 430-31. Thus, *Moore* effectively establishes a two-stage system of discovery, whereby discovery into bias occurs during the first stage, and discovery into the

6

253, 260 (6th Cir. 2006) (finding that district court correctly declined to consider alleged conflict of interest where plaintiff "did not develop the record" regarding her allegation of a conflict of interest, without suggesting that any initial threshold showing was required for plaintiff to develop the record on that issue).

In the absence of any clear and binding Sixth Circuit precedent, district courts have, perhaps unsurprisingly, come to divergent conclusions as to whether to follow the *Putney-Likas-Huffaker* line of cases or to take a lead from the *Calvert-Kalish-Moore* approach.  One of the earliest district court cases of note, *Bennett v. Unum Life Insurance Co. of America*, 321 F. Supp. 2d 925 (E.D. Tenn. 2004), actually preceded the cases in both the *Putney* and *Calvert* lines, and addressed the question of whether an initial threshold showing of bias is required to obtain discovery, with the benefit of precious little governing case law.  In the absence of any clear precedent on which it could rely, the *Bennett* court considered the policy interests at stake and concluded that

> a "middle of the road" approach is appropriate, neither prohibiting nor permitting discovery in ERISA cases simply because the fiduciary holds dual, conflicting roles.  Rather, where a claimant 1) identifies specific procedural challenges concerning a fiduciary's decision to deny or terminate ERISA benefits, and 2) makes an initial showing to the court that he has a reasonable basis to make such procedural challenges, then good cause exists to permit the plaintiff to conduct appropriate discovery.

*Id.* at 933.

---

substance of a plaintiff's claim occurs during the second stage, if bias has been "colorably established" in the first stage of discovery.  As such, to be precise, *Moore* actually stands for the proposition that "the only logical reading of . . . *Wilkins* is that until a due process violation is at least colorably established [by discovery into bias], *additional* discovery beyond the administrative record into a plaintiff's denial of benefits claim is impermissible."  *Id.* at 431 (bracketed material and emphasis added).

7

In a subsequent ruling, issued after the case law had developed somewhat, another district court followed *Putney* and *Bennett* and declined to follow *Calvert* and *Kalish* because the relevant language from those two cases is dicta. *Bradford v. Metro. Life Ins. Co.*, No. 3:05-CV-240, 2006 WL 1006578, at *3-4 (E.D. Tenn. Apr. 14, 2006). The *Bradford* court found that "the initial threshold showing, as stated in *Bennett*, is still applicable in this Circuit" and that, therefore, a plaintiff seeking discovery must first "identify specific procedural challenges concerning the decision to deny or terminate ERISA benefits" and "make an initial showing to the Court that she has a reasonable basis to make such procedural challenges." *Id.* at *4. Other district courts have come to this conclusion as well. *See, e.g.*, *Geer v. Hartford Life & Accident Ins. Co.*, No. 08-12837, 2009 U.S. Dist. LEXIS 48332 (S.D. Mich. June 9, 2009); *Villani v. Cuna Mut. Ins. Co.*, No. 08-CV-10885, 2008 U.S. Dist. LEXIS 48398 (E.D. Mich. June 25, 2008); *Ray v. Group Long Term Disability Policy*, No. 2:06-cv-0460, 2007 U.S. Dist. LEXIS 2169 (S.D. Ohio Jan. 11, 2007).

In *McInerney v. Liberty Life Assurance Co. of Boston*, No. 06-2681-MaV, 2007 WL 1650498, at *2-4 (W.D. Tenn. June 4, 2007), another district court contemplated arguments based on the competing *Calvert* and *Putney* lines. There, the court concluded that *Putney* provided "controlling precedent" that "the law in the Sixth Circuit remains that there is no automatic right to limited discovery as to procedural irregularities, and some initial showing of procedural irregularity must be presented before discovery will be allowed." *Id.* at *3. However, in reaching this conclusion, the court did not address the fact that none of the cases in the *Putney* line, including *Putney* itself, are published, and its conclusion that *Putney* therefore

8

represents "controlling precedent" appears to be at odds with the Sixth Circuit rule on this point. *See Gray*, 520 F.3d at 620 n.1; 6th Cir. R. 206(c).

Other district courts have reached the opposite conclusion in determining whether an initial threshold showing is required to permit discovery in cases where an ERISA plaintiff alleges a conflict of interest. *See, e.g.*, *Raney v. Life Ins. Co. of N. Am.*, No. 08-169-JMH, 2009 U.S. Dist. LEXIS 34098 (E.D. Ky. Apr. 20, 2009); *Hays v. Provident Life & Accident Ins. Co.*, 623 F. Supp. 2d 840 (E.D. Ky. Dec. 12, 2008). In *Pratt v. Walgreen Income Protection Plan for Store Managers*, No. 3:05-1062, slip op. (M.D. Tenn. Dec. 6, 2005), another judge in this district affirmed a magistrate judge's order allowing discovery into potential bias. The court noted that, although the language in *Calvert* and *Kalish* is dicta, it is "rather strong dicta." *Id.* at 3. The court went on to note that *Wilkins* itself states that discovery is permitted into alleged bias and that, "absent some discovery, it would be difficult for most plaintiffs to do anything more than allege bias since the information concerning the potential bias is in the hands of the employer and/or the plan administrator." *Id.* at 3-4.

More recently, in *Myers v. The Prudential Insurance Co. of America*, 581 F. Supp. 2d 904 (E.D. Tenn. 2008), another court concluded that an initial threshold showing is not required, in a particularly thorough and well-reasoned opinion that was issued by the same judge who authored *Bennett* and that constitutes a strong rebuke of the *Bennett* ruling. In *Myers*, the court revisited *Bennett*, noting that the two cases involve the "identical" issue. *Id.* at 907. The court then reviewed the intervening developments in the case law, including the rulings in *Calvert* and *Kalish*, which the court characterized as "persuasive dicta, but dicta nonetheless," *id.* at 909-10, and the non-binding rulings in the *Putney* line of cases, *id.* at 910-11. The court found that the

9

rulings in *Calvert* and *Kalish* were "highly persuasive in favor of allowing discovery absent any threshold showing," *id.* at 911, and that the Sixth Circuit's ruling in *Moore* was the published case most directly on point, to the extent that *Moore* implies that no initial threshold showing of bias is required for a plaintiff to conduct discovery on that issue, *id.* at 910, 911.

The *Myers* court also found the Supreme Court's recent ruling in *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008), to be both relevant and persuasive. In *Glenn*, the Supreme Court held that a conflict of interest exists where an entity "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Id.* at 2346; *see also Calvert*, 419 F.3d at 506. Therefore, the court held, "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits," with "the significance of the factor [dependent] upon the circumstances of the particular case." *Id.* The court noted that the existence of a conflict of interest neither changes the standard of review in an ERISA case nor requires "special burden-of-proof rules, or other special procedural or evidentiary rules," but, rather, constitutes one factor that a court must take into consideration in evaluating an ERISA claim. *Id.* at 2350-51.

The *Myers* court read *Glenn* as

> a warning against establishing special evidentiary procedures to apply to interest/bias issues that arise in ERISA-denial-of-benefits cases. Instead, the Supreme Court exhorts the courts to examine and review each case on an individual basis, which would include fashioning an appropriate discovery plan based on the tools already available to parties in any other civil action.

*Myers*, 581 F. Supp. 2d at 912. The *Myers* court distanced itself from its earlier ruling in *Bennett*, noting that, by requiring a plaintiff to make an initial threshold showing of bias, the effect of *Bennett* was to create a special evidentiary procedure for ERISA cases involving claims

10

of conflict of interest or bias, in contravention of *Glenn*. *Id.* at 912-13. In light of the Sixth Circuit's rulings in *Calvert*, *Kalish*, and *Moore*, and, in particular, the Supreme Court's ruling in *Glenn*, the *Myers* court found the *Bennett* approach "no longer appropriate." *Id.* at 913.

This court concludes that where, as here, a plaintiff has alleged an inherent conflict of interest to the extent that the entity that makes a benefits determination is the same entity that is responsible for paying that claim, the rulings in *Wilkins*, *Moore*, and *Glenn* compel the result that discovery into this alleged conflict of interest is proper, even if the plaintiff has not made an initial threshold showing of bias beyond alleging the existence of this type of conflict of interest.[3]

First, the court notes that the language in *Wilkins* is framed in terms of a plaintiff's allegations, stating that a court may consider evidence necessary to resolve issues "such as an *alleged* lack of due process" or "*alleged* bias." *Wilkins*, 150 F.3d at 618. Nothing in *Wilkins* suggests that anything more than an allegation of bias is required of a plaintiff to establish that evidence regarding bias is both relevant and, therefore, discoverable. Likewise, although *Moore* does not state so explicitly, nothing in that opinion suggests that any type of initial threshold showing is necessary for a plaintiff to obtain discovery into allegations of bias. Moreover, as the Supreme Court noted in *Glenn*, and consistent with the persuasive rulings of the Sixth Circuit in

---

[3]Of course, the scope of permissible discovery is narrow and "must be strictly and carefully circumscribed to the needs of the particular case." *Myers*, 581 F. Supp. 2d at 914. In *Myers*, the court indicated that it would not permit discovery into personnel files and pay records but would permit discovery into "any type of incentive, bonus, or reward program or system" for employees reviewing disability claims, the "specific individuals involved in the review of [the] plaintiff's claim," and "the temporal and financial depth" of any relationship between a third party reviewer and the defendant. *Id.* at 914-15. The plaintiff here has limited her discovery requests to these categories and, thus, her motion will be granted in its entirety.

11

*Calvert* and *Kalish*, discovery into bias is necessary to enable courts to evaluate the proper weight to afford a conflict of interest in adjudicating a denial of benefits claim under ERISA. To deny a plaintiff the opportunity to conduct limited discovery on the bias issue until she has made an initial threshold showing essentially handcuffs the plaintiff, who, as the *Pratt* court noted, will rarely have access to any evidence beyond a bare allegation of bias, in the absence of discovery.

## CONCLUSION

As the plaintiff has alleged an inherent conflict of interest to the extent that the defendant was responsible for both evaluating the plaintiff's disability claim and paying benefits on such claim, and as the discovery that the plaintiff seeks is very narrowly tailored to that issue, the plaintiff's motion for discovery will be granted, and the defendant will be ordered to respond to the discovery propounded by the plaintiff.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge